UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARVIN BANKS, *et al.*, | |
| Plaintiffs, | CIVIL ACTION NO. 1:24-cv-00474 |
| v. | (SAPORITO, J.) |
| BRADLEY BOOHER, *et al.*, | |
| Defendants. | |

## MEMORANDUM

Plaintiffs Marvin Banks, Dale Arnold, and Carl L. Varner proceed *pro se* in a fee-paid case challenging the Pennsylvania Department of Corrections ("DOC") policy for observance of Native American holidays. Defendants[1] move to dismiss the operative complaint (Doc. 23), and plaintiffs request appointment of counsel (Docs. 19, 27). For the reasons described below, the Court will grant defendants' motion in part, permit plaintiffs to proceed on First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims, and deny plaintiffs' request for appointment of counsel without prejudice.

---

[1] The Defendants are five DOC employees: Laurel R. Harry, Reverend Ulrich Klemm, Craig Copper, Bradley Booher, and Henry Hansard.

I. BACKGROUND

At the time of the complaint, plaintiffs were all incarcerated at SCI-Benner Township, although Banks has since been transferred to SCI-Fayette. The complaint alleges as follows: plaintiffs are of Native American descent and practice Native American religious traditions. These traditions include the observation of equinoxes and solstices, including the Green Corn Feast, held annually in August or September.

As described in the complaint, the Green Corn Feast traditionally involves gathering "foods like corn, beans and squash," fishing from a river in accordance with sacred traditions, and hunting for "buffalo, deer, turkey, moose, etc.," to "provide . . . a great feast" to be eaten communally. Celebration "on the wrong day[] or in the wrong manner is to bring misfortune to the creator and ancestors." Plaintiffs allege that according to their religious belief, the Green Corn Feast "must be celebrated with communal foods[. T]hese foods include meat like buffalo, deer, [and] moose," as well as fish, wild rice, corn, beans, and squash. *See* (Doc. 14, ¶¶ 13-18).

Prior to January 2023, the DOC accommodated religious inmates by offering "Ceremonial Meals," along with "time [and] space in which to

celebrate as a religious community." For these meals, the DOC served a special menu and allowed qualifying inmates to purchase from a supplemental menu. Under this prior policy, the DOC "typically" supplied[2] buffalo, turkey, corn, beans, squash, fry bread, and fresh fruit, among other foods, for Native American religious celebrations.

In January 2023, the DOC eliminated "Ceremonial Meals," and began offering "Fellowship Meals." Although the inmates would have "input" on the meal to be served by the prison, they would no longer be permitted to purchase optional menu items. Faith groups would be permitted to eat together "and afterwards engage in [30] minutes of fellowship" if communal gatherings were permitted in the prison at that time.

When these Fellowship Meals were offered, plaintiffs refused to select a meal from the general menu, believing that such a choice would "shame and disrespect their religion" because "there is no other alternative to the Green Corn Feast." Plaintiffs allege that Bradley

---

[2] Plaintiffs allege that the DOC "supplied" these foods, but also that they were "able to pay" for the foods. *See* (Doc. 14, ¶¶ 22-23). It is unclear whether the foods were included in the DOC's own revised menu, or whether they were among the supplemental items available for purchase.

Booher and Henry Hansard, the Superintendent and Chaplain at SCI-Benner Township, refused to permit them to gather communally for 30 minutes as contemplated by the policy. Plaintiffs further allege that unspecified defendants discriminated against them by "allow[ing] the Jewish community to purchase Matz[o] bread for their feasts."

Plaintiffs filed the operative complaint on May 29, 2024, asserting First Amendment free exercise claims, Fourteenth Amendment equal protection claims, and RLUIPA claims, against all defendants. Following the dismissal of several claims[3] at the screening stage pursuant to 28 U.S.C. § 1915A, plaintiffs now proceed on RLUIPA claims for injunctive relief, and First and Fourteenth Amendment claims for injunctive and monetary relief. Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

## II. MOTION TO DISMISS

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the

---

[3] The Court dismissed all individual capacity RLUIPA claims, and all claims for monetary damages against defendants in their official capacities. See (Doc. 17).

plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). The Court also disregards allegations made only in a prior complaint, *see Argentina v. Gillette*, 778 F. Appx 173, 175 n.3 (3d Cir. 2019), and any new factual allegations made in the brief opposing the motion to dismiss, *see Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 104 (3d Cir. 2016) (citation omitted).

Defendants offer four arguments for dismissal under Rule 12(b)(6).

### A. Personal Involvement

First, defendants seek dismissal of all claims against Craig Copper,

Bradley Booher, and Henry Hansard, for lack of personal involvement in the alleged violations. To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further, "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Defendants seek dismissal of the claims against Copper because plaintiffs only allege that he offered "collaborative assistance" in implementing the religious meals policy. Defendants ignore the exhibit cited for that allegation, an email chain from February 24-25, 2022, in

which Copper states that he is "[l]ooking forward to working through" the new policy, and defendant Klemm thanks Copper for his "assistance" in implementing the policy. *See* (Doc. 14-1 at 12). To the extent plaintiffs' allegation of "collaborative assistance" was unclear, the e-mail chain sufficiently supports an inference of Copper's personal involvement.

Defendants seek dismissal of Booher and Hansard, the SCI-Benner Township officials, arguing that the claims against them are based on their supervisory roles and/or their involvement in responding to post hoc grievances. However, plaintiffs plainly allege that Booher and Hansard denied them the opportunity to gather communally during the Green Corn Feast, which they allege is essential to their religion. (Doc. 14, ¶¶ 15, 32). These allegations support an inference of personal involvement as to plaintiffs' RLUIPA and First Amendment claims, so dismissal is not appropriate on this ground.[4]

### B. First Amendment/RLUIPA

Next, defendants seek dismissal of the First Amendment and

---

[4] None of plaintiffs' allegations suggest Booher's or Hansard's involvement in permitting Jewish inmates to have Matzo bread, which is the basis of plaintiffs' Fourteenth Amendment claims. However, those claims will be dismissed in their entirety, *see* Section II.C, *infra*.

RLUIPA claims on the ground that plaintiffs have not plausibly alleged a substantial burden on their religious practice.

"Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). However, a regulation limiting prisoners' religious exercise is constitutional if the record shows that it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

RLUIPA offers broader protection than the First Amendment. *See Holt v. Hobbs*, 574 U.S. 352, 361 (2015). The statute forbids the government from imposing "a substantial burden" on a prisoner's religious exercise unless the government "demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). A substantial burden under RLUIPA exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion to receive a benefit; or (2)

the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs. *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). Both the First Amendment and RLUIPA require that the beliefs in question are "sincerely held" and religious in nature. *See Holt*, 574 U.S. at 360-61.

Defendants assert that "the elimination of optional menu items does not amount to a substantial burden placed on plaintiffs' religious beliefs." But while defendants present this statement as settled law, their own supporting authorities show that it is a fact-dependent inquiry. In *Banks v. Secretary, Pennsylvania Department of Corrections*, the Third Circuit held that a Muslim inmate could sustain an issue of material fact as to whether a "feast meal" was essential to his religious practice. 601 F. App'x 101, 105-06 (3d Cir. 2015). In *Davis v. Heyns*, the Sixth Circuit affirmed a finding that a vegan meal did not substantially burden a Muslim inmate's religion, noting that the plaintiff did not contest that the vegan meal satisfied the requirements of halal. No. 17-1268, 2017 WL 8231366, at *2-3 (6th Cir. Oct. 16, 2017). Both conclusions rested on the factual question of whether the meals burdened the inmates' religious practice as reflected in the records of those cases.

Here, plaintiffs allege that the Green Corn Feast must be celebrated with certain foods because of their belief that improper observance feast brings misfortune to the creator or one's ancestors. Defendants do not appear to contest the sincerity or the religious nature of that belief. Rather, their argument seems to assume that because certain foods were denied to other religious inmates in other cases, plaintiffs have no plausible claim to religious foods of their own. But dietary restrictions can be a sincerely held religious belief protected by RLUIPA and the First Amendment. *See, e.g.*, *Banks*, 601 F. App'x at 605; *DeHart v. Horn*, 227 F.3d 47, 49-51 (3d Cir. 2000) (provision of soy milk to Buddhist inmate observing vegetarian diet). Whether such protection attaches in a particular case is a factual question, and accordingly, several courts have permitted claims challenging the Fellowship Meals policy to proceed past the pleading stage.[5]

---

[5] *See, e.g.*, *Mitwalli v. Harry*, No. 1:24-CV-00336 (M.D. Pa., filed Dec. 27, 2024) (Muslim inmate alleging entitlement to pork); *Williams v. Little*, No. 1:23-CV-00037, 2023 WL 4144567, at *3, 14-16 (W.D. Pa. June 23, 2023) (Muslim inmate alleging entitlement to halal meat and various celebratory food items); *Sanchez v. Harry*, No. 2:22-CV-01682 (W.D. Pa., filed Nov. 28, 2022) (Hebrew Israelite inmate alleging entitlement to lamb, herbs, unleavened bread, and grape juice).

Next, defendants request dismissal because in November 2023, the DOC further revised its policy to permit inmates to purchase "one shelf-stable food item." Even if the Court were to take judicial notice of the updated policy[6], that would not show that the policy was followed in plaintiffs' case, or that the shelf-stable item alleviates any substantial burden to their religious practice. Moreover, plaintiffs also allege that they were substantially burdened by their inability to celebrate the Green Corn Feast communally, so the claims would proceed against Booher and Hansard regardless of the food dispute. While a developed factual record may ultimately show that the claims lack merit, there is no basis for dismissal at the pleading stage.

### C. Fourteenth Amendment

Third, defendants seek dismissal of plaintiffs' Fourteenth Amendment equal protection claims. Plaintiffs must allege that they were intentionally treated differently from similarly situated persons

---

[6] The Court acknowledged the updated policy in a prior order, but only to make the point that any future motion for preliminary injunctive relief should address the policy in force at the time of the motion. *See* (Doc. 17 at 4 n.5) (citing *Williams v. Little*, No. 1:23-CV-01005 (Doc. 36-10) (M.D. Pa. Feb. 27, 2024)).

because of membership in a particular protected class, such as a religious group. *See Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002). Persons are similarly situated "when they are alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (citation omitted).

Plaintiffs' claim is premised on their allegation that defendants "allowed the Jewish community to purchase Matz[o] bread for their feasts." However, the complaint does not support an inference that the Jewish inmates[7] are or were similarly situated to plaintiffs. The Jewish inmates were allegedly accommodated with a single, apparently shelf-stable item (*see* Doc. 14-1 at 17); plaintiffs' religion allegedly requires a "feast" of communal foods for which "there is no other alternative," including "meat like buffalo, deer, moose," as well as fish, wild rice, corn, beans, and/or squash. Based on these allegations, the groups are not "alike in all relevant aspects."[8] *See Smith v. Kyler*, 295 F. App'x 479, 484

---

[7] Although not explicitly stated, the Court infers that plaintiffs believe the similarly situated inmates are Jewish inmates at SCI-Benner Township who were permitted to purchase Matzo bread despite the Fellowship Meals policy.

[8] The complaint does not indicate that plaintiffs requested, or would
*(continued on next page)*

(3d Cir. 2008) (an equal protection claim based on religion requires "similarly situated faiths"); *McCray v. Passaic Cnty. Jail*, No. CIV.A. 13-6975 WJM, 2013 WL 6199202, at *4 (D.N.J. Nov. 27, 2013) (without allegations of similar dietary needs, complaint did not support an inference that Jewish and Muslim inmates were similarly situated).

Moreover, nothing in the complaint suggests plaintiffs were treated differently because of their religion itself, as opposed to the demands that their requests would apparently place on the prison. *See, e.g.*, *Ellis v. United States*, No. CA 08-160, 2011 WL 3290217, at *10 (W.D. Pa. June 17, 2011) ("The mere fact that a deliberate choice was made by Defendants to deny certain Halal meat . . . while special Kosher foods were provided to Jewish inmates at Passover, does not in itself mean that the choice was made with discriminatory intent."), report and recommendation adopted, 2011 WL 3298508 (W.D. Pa. Aug. 1, 2011).

---

have accepted, a shelf-stable item comparable to what the Jewish inmates allegedly received. To the contrary, plaintiffs attach a partial list of proposed shelf-stable offerings produced in *Williams v. Little*, No. 1:23-CV-00037 (Doc. 99-61) (W. D. Pa., Feb. 1, 2024), which they explicitly reject as unacceptable because they are "not [plaintiffs'] religious way." (Doc. 14-1 at 15-16); *see also* (Doc. 25-3) (Plaintiffs' brief arguing that the Green Corn Feast "requires fresh organic traditional food. This requirement cannot be met by any shelf-stable item.")

Accordingly, plaintiffs' Fourteenth Amendment claims will be dismissed.

### D. Qualified Immunity

Finally, defendants seek dismissal based on qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). However, the Third Circuit has cautioned courts that it is "generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (unpublished).

Defendants do not explain their argument for qualified immunity, beyond asserting that plaintiffs' claims do not violate a "clearly established right of Native American/Indigenous inmates to have particular food items for the Green Corn Feast." *See* (Doc. 24 at 11-12).[9]

---

[9] To the extent defendants maintain there is no clearly established right because the beliefs of "Native American/Indigenous" inmates (or the Green Corn Feast specifically) are insufficiently religious in nature, the argument is totally undeveloped and will not be addressed. *See Burns v.*
*(continued on next page)*

Several courts have concluded that inmates have no clearly established right to demand specific food items, such as halal meat.[10] However, the Third Circuit, and district courts within the circuit, have recognized a clearly established First Amendment right to "religiously acceptable meals," which cannot be infringed "without sufficient justification" pursuant to *Turner v. Safley*, 482 U.S. 78 (1987). *See Potts v. Holt*, 617 F. App'x 148, 152 (3d Cir. 2015) (unpublished).[11]

Collectively, these authorities suggest a question of fact as to whether qualified immunity applies here. Presuming no clearly established right to a "feast" of the exact foods that plaintiffs demand,

---

*Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011) ("The burden of establishing qualified immunity falls to the official claiming it as a defense.").

[10] *See, e.g.*, *Molina v. Little*, No. 1:23-CV-00257, 2024 WL 3548453, at *4 (W.D. Pa. July 26, 2024); *Rogers v. United States*, No. CA 08-149, 2011 WL 3290208, at *5 (W.D. Pa. June 17, 2011) (listing cases), report and recommendation adopted, 2011 WL 3298422 (W.D. Pa. July 29, 2011).

[11] *See, e.g.*, *Cruz v. Auker*, No. 1:21-CV-655, 2024 WL 3597047, at *5 (M.D. Pa. July 30, 2024) (acknowledging clearly established "right to religious meals"); *Jupiter v. Johnson*, No. 3:10-CV-01968, 2011 WL 4527803, at *15 (M.D. Pa. Apr. 26, 2011) (finding clearly established "right of a prisoner to a diet consistent with his religious beliefs"), report and recommendation adopted, 2011 WL 4527791 (M.D. Pa. Sept. 28, 2011).

the complaint plausibly states a claim that defendants violated plaintiffs' clearly established right to a "religiously acceptable meal" in some form, subject to any justification for this policy that emerges from a developed factual record. Accordingly, the remaining claims[12] will not be dismissed on this ground.

### III. APPOINTMENT OF COUNSEL

Plaintiffs request that the Court appoint them counsel. Unlike in a criminal case, a prisoner has no constitutional or statutory right to appointed counsel in a civil case. *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). Under the *in forma pauperis* statute, however, a federal court may request that an attorney represent an indigent person on a pro bono basis. *See* 28 U.S.C. § 1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).

In this case, although plaintiffs allege that they are "unable to afford counsel," they have paid the full filing and administrative fees to commence this action and have not been granted leave to proceed *in*

---

[12] This reasoning applies equally to plaintiffs' RLUIPA claims, because RLUIPA offers "greater protection" than the First Amendment. *See Holt*, 574 U.S. at 360-61.

*forma pauperis*. Accordingly, the request will be denied without prejudice. *See Mitchell v. Henry*, 255 Fed. App'x 684, 686 (3d Cir. 2007) (declining to appoint counsel in fee-paid appeal).

## IV. CONCLUSION

For the reasons described above, the case will proceed on plaintiffs' RLUIPA claims for injunctive relief, and First Amendment claims for injunctive and monetary relief, against all defendants. An appropriate order follows.

Dated: March 5, 2025　　　　　　　　　*s/Joseph F. Saporito, Jr.*
　　　　　　　　　　　　　　　　　　　JOSEPH F. SAPORITO, JR.
　　　　　　　　　　　　　　　　　　　United States District Judge